### NOBLE et ux. v. HOPEWELL NAT. BANK et al.

#### No. 6581.

Circuit Court of Appeals, Third Circuit.

May 5, 1938.

On Rehearing Aug. 10, 1938.

624

David V. Cahill, of New York City, for appellants.

David L. Smith, of Trenton, N. J., for appellee Hopewell Bank.

John F. McCarthy, of Princeton, N. J., for appellee Princeton Bank.

Before DAVIS and BIGGS, Circuit Judges, and WATSON, District Judge.

BIGGS, Circuit Judge.

The appellants, husband and wife, upon April 7, 1937, filed a petition in the District Court of the United States for the district of New Jersey, pursuant to the provisions of section 75 of the National Bankruptcy Act, as amended, 11 U.S.C.A. § 203, alleging themselves to be farmers, personally engaged in producing products of the soil, and insolvent, unable to meet their maturing debts. The petition contained the usual prayers for composition or for an extension of time in which the appellants might pay their debts and for a stay of all other proceedings. This petition was filed pro se and was inartistic in form. For example, the schedules accompanying the petition were chaotic and incomplete.

The petition alleged that the principle asset of the appellants was their home and farm situated in Mercer County, New Jersey; that there were mortgages and liens against the property aggregating approximately $28,000, and that the property itself was worth in the neighborhood of $50,000; that the property was to be sold by the sheriff of Mercer county upon April 7, 1937, in a foreclosure proceeding. The petition also contained the following statement: "Your petitioning debtors are desirous of either renting or selling the premises, and they truly believe that if sufficient opportunity is given to them, they will be able to rent or sell the premises and pay off all of their creditors either immediately under a composition agreement or in full upon an extension agreement, pursuant to section 75 of the National Bankruptcy Act, as amended."

Shortly after the filing of the petition a stay of all other proceedings was granted by the District Court. The appellees filed a motion to dismiss the petition upon the ground that the appellants were not engaged in farming within the purview of section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203. Affidavits were filed by the parties in support of and in opposition to the relief sought by the petition.

Upon May 12, 1937, the District Judge dismissed the petition upon the ground that the appellants were not entitled " * * * to the rights under section 75 of the National Bankruptcy Act, as amended. * * *" No appeal was taken by the appellants from this order.

In his opinion the learned District Judge, In re Noble, 19 F.Supp. 504, stated in part:

"Petitioners * * * purchased a farm in 1922, consisting of 82 acres. * * * He and his wife, and later their growing children, farmed part of the acreage for fodder, and conducted a dairy thereon for a number of years. During this period the health of Mr. Noble declined and he is at present a victim of asthma. * * *

"It appears, in addition to ill health, that Mr. Noble has had serious financial reverses. There are existing against him a number of unsatisfied judgments and some thousands of dollars of general creditors. It is clear that he has been progressively unsuccessful in his endeavors to farm the land. * * * His operations finally came to a standstill in November of 1936 when he sold the remnant of his dairy herd and leased his barns for the winter until May 1, 1937. He asserts that he has some acreage in alfalfa and hay. From a letter introduced in evidence it appears that in 1936 such an operation was conducted under a government grant to aid soil productivity. He has purchased, or has under contract, some seed for the planting of corn, and has hopes for realizing some money from the sale of this hay and grain. He also has hopes of renting the farmhouse and moving to less pretentious quarters 'down the road.' Witnesses connected with the Farm Land Bank of the district concede that as farm land the entire farm has no greater value than $15,000.

The anticipated income from the farming operations on this land, even though it amounts to the most optimistic prediction of the petitioners, would not be sufficient to support such a capitalization, not to say the aggregate of the mortgage indebtedness which amounts to nearly twice that sum."

The District Judge then goes on to state that the land is in a vicinity where persons of wealth have recently purchased estates and that the appellants feel that if they could retain the premises for a period some purchaser might be found who would pay "handsomely" for the property and that upon such a basis the appellants value the farm at $50,000. The opinion then states:

"It is my conception that Congress passed the Frazier-Lemke Act for the purpose of rehabilitating distressed farmers as such. The only farm work accomplished on this acreage is that which Mr. Noble performs in spite of his asthmatic condition and that which his son John accomplishes during his week ends home from a New York preparatory school. Their plight is one to stir sympathy, but does not entitle them to the consideration of the legislation under whose protective wing they seek shelter. They do not hope to become rehabilitated in the occupation of farmers. Their hopes turn on the possibilities of a lucky deal in the real estate market.

" * * * There is no real indication that the petitioners would be benefited. Therefore, brushing aside the technical objection, I find that the petitioners are not farmers within the meaning of the legislation and the motion of the banks [appellees] must prevail that the petition be dismissed * * *."

At some time upon April 7, 1937, the property had been sold by the sheriff of Mercer county to Boudinot Atterbury, but the confirmation of the sale, of course, was enjoined by the stay issued by the District Court. Following the order of May 12, 1937, dismissing the petition, and upon June 24, 1937, a deed conveying the property was duly delivered to Mr. Atterbury.

Thereafter and upon July 26, 1937, another petition was filed by the appellants, pursuant to section 75 of the act. This petition was prepared for the appellants by counsel and contains details lacking in the first petition. It is alleged, for example: "That at the present time the debtors are raising on their farm various products including alfalfa, soy beans, hay, vegetables for home consumption, Sudan grass for hay, apples, pears, poultry and eggs for home use." The petition closes with prayers in the usual form for a composition of the appellants' debts or an extension of time in which to pay them and for a stay of all other proceedings.

Upon August 4, 1937, a rule to show cause issued out of the court below stating in part: "On the petitions of John D. Noble and Margaret E. Noble filed on April 7, 1937 and July 26, 1937, and the affidavit of John D. Noble verified the fourth day of August, 1937, and on all the papers filed and proceedings had herein it is ordered * * *" that certain named persons, including the sheriff of Mercer County, Boudinot Atterbury, and the appellees, should appear and show cause why the "petitions" should not be approved by the court and appropriate relief granted to the appellants.

Upon August 6, 1937, the District Court proceeded to a hearing upon the two petitions. No testimony was taken, but there was extended argument by counsel for the respective parties and thereafter the District Court entered a decree dismissing the second petition and denying reconsideration of the first. From this decree, the appeal is taken.

Strictly speaking, no evidence was before the District Judge at the hearing upon August 6, 1937. The colloquy between the court and counsel indicates that the parties treated the facts as disclosed by the affidavits filed with the first petition as known to the court. At the hearing reference was made also to the doctrine of res judicata upon the apparent assumption that the decree dismissing the first petition adjudicated all questions presented by the second. The rule to show cause of August 4, 1937, however, expressly issued upon the first petition as well as the second petition, despite the dismissal of the former, and the hearing of August 6, 1937 was upon both petitions.

We think it apparent from an examination of the opinion of the court below that the grounds of dismissal of the first petition were in fact twofold: First, that the appellants were not farmers within the purview of subsection (r) of section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203(r); and, second, upon consideration of all of the circumstances, the learned

District Judge was of the opinion that it would be impossible for the appellants to compose their debts or gain an extension from their creditors in the manner prescribed by the Frazier-Lemke Act, Bankr. Act, § 75(s), as amended, 11 U.S.C.A. § 203(s). In our opinion the court below had jurisdiction to determine and dispose of the first question at that stage of the proceedings, but it did not have the power to dispose of the second question until after the appellants had proposed some terms of composition or extension as prescribed by the Frazier-Lemke Act, or had had opportunity so to do.

In our opinion the appellants were farmers within the purview of subsection (r) of section 75 of the act. First National Bank & Trust Co. v. Beach, 301 U.S. 435, 439, 57 S.Ct. 801, 803, 81 L.Ed. 1206. Indubitably, the appellant John Noble was a farmer personally engaged in dairy farming. As stated in the Beach Case (page 803), "He was in that business or in none," and it is apparent from the record that Margaret E. Noble, the other appellant, had been engaged in farming operations upon the premises at least up until May 6, 1937. Though the affidavit of E. B. Greey states that John Noble was employed in "some form of business which requires a greater portion of his time away from the property," for a period of about a year preceding the filing of the first petition, in the same affidavit Greey refers to farming operations upon the premises. The Greey affidavit does not indicate the nature of Noble's other business, if any, or make any suggestion of amount of income received by him from such outside source. Assuming, however, that a farmer by straitened circumstances is forced to leave his farm in order to support his family, we do not think that he is a farmer any the less, provided his absence be temporary, and there is nothing in the record to indicate more than temporary absence upon the part of Noble. Indeed, the length of time spent upon the farm is not the only test. Sherwood v. Kitcher, 2 Cir., 86 F.2d 750, 751.

In our opinion the decision of whether or not an individual is a farmer must turn upon consideration of all of the circumstances. The fact that the appellants' income from farming was almost negligible due to ill health and ill luck is beside the point, and we do not consider the fact that the appellants hoped to rehabilitate themselves by a sale of the farm to some one who would use it as a country estate renders the appellants any less entitled to the benefits of the act. To lay much emphasis upon their future hopes is to give a false picture of the situation. If the appellants were farmers in fact, they did not cease to be such because they entertained hope of escape from that existence by the sale of their property to someone who would put their land to much the same use.

The question of correctness of the decision of the court in entering its decree of May 12, 1937, dismissing the first petition is not immediately before us. The second petition, however, repeats substantially all of the allegations of the first and contains others which in our opinion are sufficient to dispose of any question of res judicata, for the appellants in the second petition allege farming operations in addition to those enumerated in their first petition. The appellants also allege that they have paid certain debts referred to in the first petition.

Assuming, therefore, that the evidence before the court at the hearing upon August 6, 1937, was that of the affidavits, we are of the opinion that the learned District Judge erred in dismissing the second petition. If on the other hand the evidence of the affidavits was not before the court at the hearing of August 6, 1937, the court should not have dismissed the petition since upon its face it is sufficient and there was no evidence before the court.

It appears from the record that the first petition was filed at 10:30 a. m. on April 7, 1937. Subsection (n) of section 75, as amended, 11 U.S.C.A. § 203(n), provides that the filing of a petition with the clerk of court praying for relief under this section "shall immediately subject the farmer and all his property * * * to the exclusive jurisdiction" of the federal court. If the federal court had taken jurisdiction of the property, its purported sale by the sheriff of Mercer county was a nullity.. In re O'Brien, 2 Cir., 78 F.2d 715; In re Price, D.C., 16 F.Supp. 836; In re Gunder, 7 Cir., 88 F.2d 284, certiorari denied 164 East 72nd Street Corp. v. Gunder, 301 U.S. 701, 57 S.Ct. 931, 81 L.Ed. 1356. The sale took place on April 7, 1937, but there is nothing in the record to indicate the hour of the day at which it was held, whether it was before or after the filing of the first petition. Therefore, upon the record in the case at bar we are not in a

position to pass upon the question of the sufficiency of the sale to Mr. Atterbury or of the adequacy of its confirmation. Indeed, such questions may not be actually presented to us for determination upon this appeal. The order allowing the appeal expressly reserves to Mr. Atterbury the right to convey the premises to the appellee First National Bank of Princeton, and he may have done so. These questions must be left to the determination of the District Court.

We must also leave to the determination of the District Court the question of the legal sufficiency of any offer of composition or extension to be made hereafter by the appellants to their creditors. Whether or not, under all the circumstances of the case at bar, such an extension or composition is practical or feasible, must be determined by the court below.

The decree of the court below, in so far as it relates to the dismissal of the second petition, is hereby reversed, and the cause is remanded with directions to reinstate the petition and proceed in conformity with this opinion.

## On Rehearing.

After rehearing we will consider but one issue presented by the case at bar, which we think is dispositive.

The original petition of the farmer-debtors was filed upon April 7, 1937. It was dismissed by the District Court upon the ground that the petitioners were not farmers within the meaning of subsection (r) of Section 75 of the Bankruptcy Act as amended, 11 U.S.C.A. § 203 (r). No appeal was taken from the decree of dismissal. A second petition was filed by the farmer-debtors upon July 26, 1937. Thereupon the District Judge entered an order upon the two petitions requiring certain persons named therein, including the appellees, to appear and show cause why the petitions should not be approved and enjoining any interference with the property of the debtors pending the determination by the court of the issues presented by the rule to show cause. After argument upon the return day of the rule, the District Court entered a decree dismissing the second petition and denying reconsideration of the original petition. Upon application to the District Court, an order was entered by the District Judge allowing an appeal from the decree referred to.

Did the allowance of the appeal by the District Court give this court jurisdiction of the appeal?

In neither petition did the appellants ask to be adjudged bankrupts pursuant to the provisions of subdivision (s) of Section 75, 11 U.S.C.A. § 203 (s). The appellants contend, however, that the order of the District Court from which the appeal was taken assimilates to an order adjudicating or refusing to adjudicate a petitioner to be a bankrupt, appealable as of right under the provisions of Section 25a of the Bankruptcy Act as amended, 11 U.S.C.A. § 48 (a). The appellees contend that the order appealed from is an order entered in the course of "proceedings" in bankruptcy and an appeal may be allowed only by this court upon the exercise of its discretion pursuant to the provisions of Section 24b of the Bankruptcy Act, 11 U.S.C.A. § 47 (b). Meyer v. Kenmore Granville Hotel Co., 297 U.S. 160, 56 S.Ct. 405, 80 L.Ed. 557.

Subsection (n) of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203 (n), provides that upon the filing of a petition with the clerk of the court by the farmer debtor praying for relief pursuant to the provisions of Section 75, the farmer and all his property shall be immediately subject to the jurisdiction of the court. When the petitions in the case at bar were filed, proceedings in bankruptcy were then instituted and the debtors and their property immediately became subject to the jurisdiction of the court below. Had the petitioners prayed that they be adjudicated bankrupts, the provisions of the second paragraph of subsection (n) would have been applicable and the jurisdiction of this court would have been the same "as if", to quote the words of the Statute, "a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition, asking to be adjudged a bankrupt, was filed with the clerk of court * * *". A convincing argument could then have been made to the effect that the order dismissing the petitions was appealable under Section 25a of the Bankruptcy Act, it being in the nature of a judgment refusing to adjudge the appellants bankrupts. Cowherd v. Phoenix Joint Stock Land Bank, 8 Cir., 94 F.2d 329. By analogy, see, also, O'Connor v. Mills, 300 U.S. 26, 57 S.Ct. 381, 81 L.Ed. 483.

In view of the fact, however, that the appellants have not sought to be adjudged

bankrupts, it is difficult to see how a dismissal of the petitions may be deemed to be the equivalent of a refusal to adjudicate them bankrupts.

We are of the opinion therefore that the appeal is not one from an order refusing to adjudge the appellants bankrupts or the equivalent thereof, but is an appeal from an order made in proceedings in bankruptcy. Raentsch v. American Co., 9 Cir., 82 F.2d 770. Therefore, in view of the fact that the appeal was allowed by the District Judge and not by order of this court, this court is without jurisdiction to entertain the appeal which, accordingly, is dismissed.